## COUNTY OF ADDISON,

### AT THE

## JANUARY TERM, 1881.

PRESENT:

Hon. HOMER E. ROYCE,
Hon. TIMOTHY P. REDFIELD, ⎤
Hon. H. HENRY POWERS, ⎬ ASSISTANT JUDGES.
Hon. RUSSELL S. TAFT, ⎦

---

ALBERT E. STANLEY *v.* FRANK CHANDLER ET AL.

[IN CHANCERY.]

*Adoption of an Heir-at-Law.*

The adoption of an heir-at-law by a husband, without the consent of his wife, and leaving no issue, under an act of the Legislature will not operate to prevent his widow from inheriting by force of the Gen. Sts. c. 56, s. 1, $1000, and one half the remainder of his estate, *in her own right;* and, at her decease, *her share will pass to her heirs, and not to the heirs, or devisees of the adopted person.*

THIS cause was heard at the December Term, 1880. PIERPOINT, Chancellor, decreed, that, upon the bill and answer in this cause

it is *pro forma* adjudged that Sarah M. K. Bullock, mentioned in the orator's bill, was lawfully seized in fee simple, at the time of her decease, of all the land described in said bill, and that the orator is lawfully entitled to hold and administer the same as the executor of her last will. And it is further ordered and decreed that the defendants and every of them be, and they are, perpetually enjoined from commencing any suit or proceeding at law or in equity to obtain possession of the land mentioned in the said bill of complaint, or any part thereof, and from making or asserting any claim, right or title thereto by virtue of the will of John C. C. Bullock, or otherwise through or under the said John C. C. Bullock. The bill set forth that:

John Bullock, formerly of Leicester aforesaid, having a wife named Sarah M. K. Bullock, but no issue, at the session of the Legislature of the State of Vermont for the year 1846, procured the passage of an Act, approved November 2, 1846, of the following tenor :

An act to alter the name of John Chauncey Chandler.

It is hereby enacted by the General Assembly of the State of Vermont, that John Chauncey Chandler, of Leicester, in the county of Addison, shall hereafter be known and called by the name of John Chauncey Chandler Bullock, and is hereby constituted heir-at-law of John Bullock of said Leicester : *Provided*, said John Bullock shall certify his assent thereto by an instrument in writing, under his hand and seal, executed in the presence of two witnesses, and cause the same to be recorded in the town clerk's office in said Leicester, within one year from the 23d day of October, 1846.

Approved, November 2, 1846.

On the 30th day of January, 1847, the said John Bullock duly certified his assent to said act by an instrument in writing under his hand and seal, executed in the presence of two witnesses, and on the 6th day of February, 1847, caused said instrument to be recorded in the town clerk's office in said Leicester. Said instrument is as follows :

Whereas an act of the Legislature of the State of Vermont, passed at the October session, 1846, and approved November 2, 1846, altering the name of John Chauncey Chandler, to John Chauncey Chandler Bullock, and by said act was constituted heir-at-law of the said John Bullock, named in said act, provided the said John Bullock shall certify his assent

thereto by an instrument in writing under his hand and seal : Now this may certify to all whom it may concern, that I, the said John Bullock, of Leicester, county of Addison and State of Vermont, do in the fullest manner, give my consent to the provision of the aforesaid act of the Legislature constituting John C. C. Bullock my heir-at-law ; and the said John C. C. Bullock is from this date to be considered and treated as the heir of John Bullock of Leicester.

The bill set out, in substance, that the said Chandler, on the passage of the said act, went to live with Bullock, and continued to do so, till September 21st, 1851, when the said Bullock died ; that after this the said John C. C. Bullock and the widow of said John Bullock continued to live together and carry on and manage the estate in common ; that John C. C. Bullock died without issue on the 29th day of December, 1863, leaving a will, by which he gave all his estate to the defendant, Frank Chandler, for and during his natural life, and after his death to the heirs of his body, forever ; which will was duly proved and established. Soon after this, administration was taken out on the estate of John Bullock ; and a controversy arose between the administrator and said Frank Chandler in respect to the distribution of John Bullock's estate ;—the administrator claiming that the widow of John Bullock was legally entitled to $1000, and one half of the remainder of the said estate ; and said Chandler claiming that the whole estate of John Bullock belonged to the devisees of John C. C. Bullock. The matter was regularly brought before the Probate Court for the district of Addison, and said court decided and decreed that the widow of John Bullock was entitled to one half of the real estate, of which John Bullock died seized, and the devisees under John C. C. Bullock's will, the other half. From this decision said Chandler appealed to the County Court ; the County Court affirmed the decision ; and while the case was pending in the Supreme Court, a compromise agreement was entered into, by which the widow was to have one half, and the devisees the other half, of the real estate. Commissioners, appointed by the Probate Court, made partition of the said real estate ; and their report was accepted by the court, and acquiesced in by the parties, till the death of the widow, February 3d, 1879. The said widow of John Bullock made her will, appointing the orator her executor.

The bill, also, stated the said Frank Chandler now claimed that he was the owner of *all the real estate* owned by John Bullock; and that he has six children.

*E. R. Hard* and *Davenport & Eddy*, for the orator.

The word " issue " is defined by the Gen. Sts. c. 56, s. 19. As applied to John Bullock, it means " the fruit of his loins,—a child or children by him begotten, and born of his wife, in lawful wedlock." No other definition or forced signification is admissible. Until there is child or children answering that description, there is no " *issue.*"

The widow had vested in her, by virtue of her marriage, the right to bear lawfully begotten issue, to have such issue inherit from their father. And he dying intestate, and upon failure of issue, she surviving her husband, she had the rights of all widows, under the general law. The legislature could not single her out, and without her consent, authoritatively declare that she should not have the rights of other widows whose husbands died without issue. *Bates* v. *Kimball.* 2 D. Chip. 77; *Stamford* v. *Barry*, 1 Aik. 314; *Bradford* v. *Brooks*, 2 Aik. 284.

When a statute is derogatory to common or individual right, no case can be brought within it, except such as comes within its terms by imperative necessity. *Farnsworth* v. *Conant*, 48 Vt. 209.

When John Bullock died, one-half his real estate in value, plus $1000, passed instantly to his widow—the other half, minus $1000, to his heir-at-law. *Sawyer* v. *Sawyer*, 28 Vt. 249; *Johnson* v. *Johnson*, 41 Vt. 467.

*John W. Stewart*, for the defendants.

The children of Chandler, being minors, could not be affected by the compromise. The material question presented is simply this: What did the heir-at-law and adopted son of Bullock inherit at the latter's decease?

First. The act of 1846 was, in substance and legal effect, that the adopted son should take the share of Bullock's estate he would be entitled to as his child; and therefore, second, his case falls within the first canon of descent. Gen. Sts. c. 56, s. 1. He

was not the issue, but by force of the statute he became and was the child of Bullock and his heir-at-law, and, therefore, was entitled to inherit his estate in virtue of such heirship qualified and defined by the relationship of father and son thus legally established. *Moore et al.* v. *Estate of Moore*, 35 Vt. 98. Third. The inheritance, therefore, is cast and settled before the second canon is reached, so that the widow can claim nothing in default of " issue." If this be not so, and if the widow is entitled to the inheritance in default of " issue," for instance, one half of the estate, then equally and for precisely like reasons, would the father inherit the other half under the third canon, and the kindred named in the fourth and fifth canon, in turn, so that the right of the heir-at-law would be wholly denied, and the act of 1846 become nugatory. Fourth. The court cannot declare the act void ; but must give it effect ; and the construction here claimed is in line with the obvious intent of Bullock, and with the spirit and scope of the act itself ; and the only possible one by which the act can be construed.

The opinion of the court was delivered by

ROYCE, J. This bill is brought by the orator as executor of Sarah M. K. Bullock for the purpose of quieting the title of the orator as such executor to certain lands described in the bill, and which, the bill alleges, constitute a part of the estate of Sarah M. K. Bullock.

The defendant Frank Chandler, for himself and as guardian *ad litem* of the other defendants, who are his minor children, denies by his answer that Sarah M. K. Bullock ever had any right, title, or interest in the lands described in the bill which did or could descend to her heirs or devisees, and claims that all her rights therein terminated at her decease.

The testatrix claimed title to the lands described, as heir-at-law of her deceased husband, John Bullock, and no question is made as to her right to the same, unless the act of the Legislature passed in 1846 constituting John Chauncey Chandler heir-at-law of said John Bullock, and what was done by John Bullock in giving his consent to said act operated to defeat her right to take

by descent that portion of his estate which by the first section of chapter 56 of the Gen. Sts., descends to the widow, where the husband dies leaving no issue.

It is claimed by the defendant Chandler for himself and those whom he represents, and who claim title under the said John Chauncey Chandler, that by the passage of the act constituting him heir-at-law of John Bullock, and John Bullock having consented to the same, he thereby became his heir, and capable of inheriting from him to the same extent that he would have done if he had been his child. John Bullock died intestate, and without issue, and by the statute of descents in force at the time of his death, the real estate of which he died seized, that was not required for the payment of debts and expenses of settling his estate, would descend : First, in equal shares to his children or the legal representatives of deceased children. Second, if he leave no issue his widow shall be entitled to the whole of his estate forever, if said estate shall not exceed one thousand dollars, and if the estate shall exceed that sum, the widow shall be entitled to one thousand dollars and one half of the remainder, and the remainder of the estate shall descend in the same manner as the whole would if no widow had survived. There are further provisions in the statute prescribing to whom of the kindred of the deceased his estate shall descend, in case he leave no widow or issue.

The question is, did the adoption of John Chauncey Chandler in the manner in which it appears he was adopted, constitute him in a legal sense the child or issue of John Bullock, so that under the general statutes of descent or the special act constituting him heir, he would be entitled to the estate of John Bullock by inheritance to the exclusion of the widow ? It cannot be said that the act under and by virtue of which he was adopted, made him the child or issue of John Bullock. The words 'child,' or 'issue,' are defined to mean progeny or offspring, and the word 'issue,' as used in the chapter of descents is construed by the 19th section of that chapter to include all the lawful lineal descendants of the ancestor. That construction accords with the definition given in *Leigh* v. *Norbury*, 13 Vesey, 340, and the cases cited in 2 Redfield on

Wills, 356. The Legislature could not give inheritable blood to John Chauncey Chandler; and if he inherits, it must be for the reason that the Legislature has arbitrarily designated him as the heir in exclusion of those who, but for that act, would have inherited John Bullock's estate. That act does not profess to repeal any portion of the then statute law upon the subject of descents. It is not shown that the wife of John Bullock was instrumental in procuring its passage, or ever approved of it, and it was in derogation of the rights secured to her by law, in case she survived her husband.

We have not been referred to any case that has been before the courts in this State in which the question of the effect and construction of an act of adoption passed by the Legislature has been considered, except that of *Moore et al.* v. *Estate of Moore*, 35 Vt. 98. The act of adoption in that case constituted the person adopted heir-at-law of John B. and Sally Dunbar in as full and perfect a manner as if she had been the daughter of the said John B. and Sally Dunbar born in lawful wedlock. Richard Moore died intestate leaving no issue, father, mother or lineal heir; Sally Dunbar was his sister, and died before the intestate, without issue; and the question presented was, whether the person adopted was entitled, as the legal representative of Sally Dunbar, to a distributive share of the estate of the intestate. The court held that the party adopted did not become an heir of the intestate by right of representation through Mrs. Dunbar; and that, as it seems to us, was all that it was necessary to decide. If the question had been in that case between the widow and the party adopted, and under an act like the one now under consideration, what is said by the court would be authority upon the construction to be given to this act. In that case it will be observed that Mrs. Dunbar gave her assent to the act, and so it might be said that as far as she had power she had designated who was to inherit her estate, so what was said by the learned judge who drew up the opinion, that by the act and the action taken under it the adopted person became heir-at-law to Mr. and Mrs. Dunbar, might in that case have been an allowable construction to put upon the act, and might have been just and equitable upon the facts of that case.

It is not necessary to determine upon the issue here made whether John Chauncey Chandler would be entitled, as heir to the estate of John Bullock to the exclusion of collateral heirs or not ; but we hold that he is not entitled as such heir to that portion of his estate which it appears was assigned under the statute to his widow. It is not necessary to pass upon the other questions made in the case.

The decree of the Court of Chancery is affirmed, and cause remanded.